UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MILTON BURGESS**                                               **CIVIL ACTION**

**VERSUS**                                                              **No. 23-5230**

**C&J MARINE SERVICES,**                                      **SECTION I**
**INC. ET AL.**

### ORDER & REASONS

Before the Court is defendant C&J Marine Services, Inc.'s ("C&J") motion for partial summary judgment.[1] Plaintiff Milton Burgess ("plaintiff") opposes the motion.[2] C&J filed a reply.[3] For the reasons that follow, the Court denies C&J's motion for partial summary judgment.

### I. BACKGROUND

This matter concerns a fall aboard the M/V EMILY ALEXIS. Plaintiff alleges that he was employed by C&J as an acting captain.[4] Plaintiff's complaint asserts that, on August 7, 2023, plaintiff reported issues with the M/V EMILY ALEXIS, including the need to replace the turbo on the starboard main engine.[5] On August 8, 2023, the starboard main engine turbo caught fire.[6]

When plaintiff was notified of the fire, he alleges that he proceeded downstairs toward the engine room.[7] Plaintiff's complaint states that plaintiff turned around to

---

[1] R. Doc. No. 34.
[2] R. Doc. No. 36.
[3] R. Doc. No. 38.
[4] R. Doc. No. 1, ¶ 9.
[5] *Id.* ¶ 10.
[6] *Id.* ¶ 12.
[7] *Id.* ¶ 14.

retrieve the nearest fire extinguisher and slipped on the wheelhouse floor.[8] Plaintiff asserts that he sustained injuries to his left hip, buttocks, ribs, and lower back from the fall.[9]

Plaintiff filed his complaint against defendants C&J and the M/V EMILY ALEXIS (collectively, "defendants"), alleging claims against defendants for negligence and/or unseaworthiness.[10] Plaintiff seeks to recover general damages, loss of past earnings, loss of future earning capacity, past and future medical expenses, exemplary damages, attorneys' fees, and punitive damages.[11]

C&J then filed the present motion for partial summary judgment, arguing that it did not breach any duty to plaintiff and that the fire was not the cause of plaintiff's injuries.[12] More specifically, C&J argues that there is no evidence suggesting that C&J breached its Jones Act duty to plaintiff with respect to the wheelhouse floor and, therefore, plaintiff's Jones Act negligence claim cannot be sustained.[13] Additionally, C&J argues any alleged negligence with respect to the turbo fire was not the cause of plaintiff's injuries because plaintiff slipping was not a reasonably foreseeable risk.[14] Finally, C&J argues that this lack of a causal connection also warrants granting summary judgment on plaintiff's unseaworthiness claim.[15]

---

[8] *Id.* ¶ 16.
[9] *Id.* ¶ 17.
[10] *Id.* ¶¶ 23. 25.
[11] *Id.* ¶¶ 26–28.
[12] R. Doc. No. 36.
[13] R. Doc. No. 34-1, at 7.
[14] *Id.* at 8–9.
[15] *Id.* at 11.

In response, plaintiff argues that C&J breached a legal duty by failing to employ non-skid or slip-resistant flooring in the wheelhouse.[16] Plaintiff describes expert testimony and submits an expert report which plaintiff argues will demonstrate that C&J should have utilized non-skid or slip-resistant flooring.[17] Additionally, plaintiff argues that the lack of non-skid or slip-resistant flooring was the cause-in-fact of his injuries and the fire was merely *a* cause of his injury.[18] Plaintiff also suggests that the issue of causation is a fact question for the jury.[19]

In its reply, C&J argues that plaintiff has not presented any evidence showing that the wheelhouse floor was unreasonably slippery. Furthermore, C&J emphasizes that plaintiff testified in his deposition that the cause of his fall was his left knee losing strength and buckling underneath him.[20] Additionally, C&J argues that plaintiff's expert's testimony is insufficient to establish that the floor was unreasonably slippery or that it lacked sufficient slip-resistance.[21]

## II. STANDARD OF LAW

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the

---

[16] R. Doc. No. 36-1, at 10.
[17] *Id.* at 11.
[18] *Id.* at 13.
[19] *Id.*
[20] R. Doc. No. 38, at 2.
[21] *Id.* at 3.

3

district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.

*Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### III. ANALYSIS

The Jones Act "provide[s] a remedy to seamen and their survivors to sue for compensation for personal injury and wrongful death based on the negligence of the seamen's employer." *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 386 (5th Cir. 2014); *see also* 46 U.S.C. § 30104. "The standard of care applicable to the employer is that 'of ordinary prudence under the circumstances.'" *REC Marine Logistics, LLC v. Richard*, 470 F. Supp. 3d 606 (E.D. La. 2020) (Africk, J.) (quoting *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997) (en banc)).

"A seaman is entitled to recovery under the Jones Act 'if his employer's negligence is the cause, in whole or in part, of his injury.'" *Id.* (quoting *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 205 (5th Cir. 2019)). The standard of causation in Jones Act cases is "not demanding" and only requires "that employer negligence played *any part, even the slightest*, in producing the injury." *Gowdy*, 925 F.3d at 205 (quoting *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008)) (emphasis in original).

"While a Jones Act employer's duty to provide a safe place for the seaman to work is a broad one, [ ] the employer must have notice and the opportunity to correct an unsafe condition before liability attaches." *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989). "The standard of care is not 'what the employer

5

subjectively knew, but rather what it objectively knew or should have known.'" *Id.* (quoting *Turner v. Inland Tugs Co.*, 689 F.Supp. 612, 619 (E.D. La. 1988) (Schwartz, J.)).

As mentioned, plaintiff argues that C&J breached a duty to provide him with a safe workplace by failing to make the wheelhouse floor slip-resistant.[22] C&J's motion and reply argue that there is no evidence of negligence with respect to the wheelhouse flooring.[23] In response, plaintiff argues that there is a requirement in the maritime industry that working surfaces be outfitted with slip-resistant flooring and that defendants' failure to use the non-skid flooring caused his fall.[24] According to plaintiff, this requirement provided C&J with notice of the hazard that slippery flooring may create.[25] Plaintiff also submitted an expert report from Captain Mitchell Stoller ("Captain Stoller"), in which Captain Stoller explained that C&J's failure to install non-slip flooring fell below the applicable standard of care in the maritime industry.[26] Considering plaintiff's evidence and drawing all justifiable inferences in plaintiff's favor, plaintiff has demonstrated a genuine issue of material fact with respect to whether C&J breached a duty. *See Anderson*, 477 U.S. at 248.

---

[22] R. Doc. No. 36-1, at 11.
[23] R. Doc. No. 34-1, at 8.
[24] R. Doc. No. 36-1, at 3, 12. Plaintiff testified that, after his fall, he noticed mud, sweat, and dirt on the floor of the wheelhouse. R. Doc. No. 36-4, at 70.
[25] *Id.*
[26] R. Doc. No. 36-4. While C&J's reply suggests that Captain Stoller's testimony is not credible, there is no motion to exclude Captain Stoller's testimony before this Court.

Next, C&J argues that plaintiff cannot demonstrate that the turbo fire legally caused his alleged fall.[27] However, as discussed, plaintiff argues that the lack of non-skid flooring—not the turbo fire—was the cause-in-fact of his fall.[28] Plaintiff only argues that the fire is relevant for his Jones Act claim because it played a role in the "chaotic, rushed scene" that led to plaintiff's injuries.[29] Plaintiff appears to seek to present the fire to the jury as evidence of the circumstances surrounding the fall. Because C&J's arguments incorrectly presume that plaintiff will argue the fire is the cause-in-fact of his injuries, instead of the lack of non-skid flooring, the Court need not further address these arguments.

With respect to plaintiff's unseaworthiness claim, as mentioned, C&J argues that, because plaintiff cannot demonstrate that the turbo fire legally caused his alleged fall, partial summary judgment should be granted with respect to this claim. In response, plaintiff argues that the wheelhouse floor was the cause of his injuries but that the turbo fire is relevant for the jury to consider when determining proportionate responsibility with respect to defendants' allegation that plaintiff was contributorily negligent.[30]

"Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 205 (5th Cir. 2019) (quoting *Beech v. Hercules*

---

[27] R. Doc. No. 34-1, at 8.
[28] R. Doc. No. 36-1, at 12.
[29] *Id.* at 13.
[30] *Id.*

7

*Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012)). "There is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim." *Id.* (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)). "An unseaworthiness claim requires proximate causation, and 'a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.'" *Id.* (quoting *Johnson*, 845 F.2d at 1354).

In the present case, "[p]laintiff maintains that it was the unseaworthiness of the condition of the floor of the wheelhouse that caused his injury, not the turbo [or] the fire."[31] Therefore, for the same reasons discussed previously with respect to plaintiff's negligence claim, the Court need not address C&J's argument that there is not a sufficient causal connection between the turbo fire and plaintiff's fall.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that C&J's motion for partial summary judgment is **DENIED.**

New Orleans, Louisiana, April 17, 2024.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[31] R. Doc. No. 36-1, at 13.